Case No.  16-1670

─────────────────────────────────────────

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

─────────────────────────────────────────

JACOB J. DANLEY, and
JEFFREY MCINTYRE, JR.,

Plaintiffs-Appellants

v.

ENCORE CAPITAL GROUP, INC.,
MIDLAND CREDIT MANAGEMENT, INC.
and MIDLAND FUNDING, LLC.

Defendants-Appellees

─────────────────────────────────────────

On Appeal From The United States District Court
For The Eastern District of Michigan, Southern Division
On Case No. 2:15-cv-11535 Before The Honorable George C. Steeh

─────────────────────────────────────────

**BRIEF OF APPELLANTS JACOB J. DANLEY
AND  JEFFREY MCINTYRE, JR.**

─────────────────────────────────────────

*(Continued on next page)*

*(Continued from prior page)*

ROY, SHECTER & VOCHT, P.C.

Michelle E. Vocht
Lynn H. Shecter
707 S. Eton St.
Birmingham, MI 48009
(248) 540-7660
vocht@rsmv.com
shecter@rsmv.com


Counsel for Appellants Jacob J. Danley  and  Jeffrey Mcintyre, Jr.

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . vi

JURISDICTIONAL STATEMENT FOR ALL ISSUES . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW FOR ALL ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The Chase Agreement, in Comport with its Agreement  in *Ross,* Specifically
Reserved Assignment of the Arbitration Agreement Rendering the Arbitration
Agreement Unenforceable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The District Court Mistakenly Concluded That an Unauthenticated Exemplar
Arbitration Agreement, Wholly Devoid of Any Connection to Appellant
Mcintyre's Chase Account and Authenticated by an Employee of Appellees
Was Sufficient to Compel Arbitration Against Appellant Mcintyre's Chase
Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

The Uniform Commercial Code Does Not Apply to Legitimize the Transfer of
Arbitration Agreements for Collection Purposes Only . . . . . . . . . . . . . . . . . . . 23

Citibank Specifically Transferred Only the "Accounts", and Specifically Retained
Ownership of the "Account Documents",  Including but Not Limited to Any

Application, and Original Contract Documents with Their Terms Allowing for
Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Permitting the Truncated Court Proceedings to Be Maintained under Seal Violates
the Principles of Open Jurisprudence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39-40

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40-41

# TABLE OF AUTHORITIES

## United States Supreme Court

*AT&T Techs. v. Communications Workers of Am.*,
475 U.S. 643, 649, 106 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, . . . . . . . . . . . . . . . 33

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) . . . . . . . . . . . . . . 7

*Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 284-85 (2008) . . . . . . 29

## Circuit Courts of Appeal

*Brown & Williamson Tobacco Corp. v. F.T.C.*,
710 F.2d 1165, 1177 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 33, 36

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) . . . . . . . . . . . . . . . 20 n. 2

*Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gionis v Javitch, Block & Rathbone, LLP*, 238 F App'x 24,
28 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20 n. 2

*Great Earth  Cos.v. Simons*, 288 F. 3d 878, 889 (6th Cir. 2002) . . . . . . . . . . . . . 21

*In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470 (6th Cir. 1983) . . . . . . . . 33

*In re Perrigo Co.*, 128 F.3d 430, 446 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 33

*Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) . . . . . . . . . . . 6

*Madden v. Midland Funding, LLC*, 786 F.3d 246 (2nd Cir.  2015) cert. den.

___US___; 136 S Ct 1484 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*McMullen v. Meijer, Inc.,* 355 F.3d 485, 491 ( 6th Cir. 2004) . . . . . . . . . . . . . . . 21

*Morrison v Circuit City Stores*, 317 F3d 646, 665 (6th Cir. 2003) . . . . . . . . . . . . 1

*Nat'l City Bank, Northwest v. Columbian Mut. Life Ins. Co.*, 282 F.3d 407 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Seiden Assocs v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2nd Cir. 1992) . . . . . . . 27

*Smith v. SEC*, 129 F.3d 356, 359 n.1 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 34

*Smith v. Transworld Sys. Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992) . . . . . . 20 n. 2

## U.S. District Courts

*Banque v. Amoco Oil Co.*, 573 F. Supp. 1464 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . 25

*De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 320 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*GMAC Commer Credit LLC v Springs Indus*, 171 F. Supp. 2d 209 (S.D.N.Y. (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 966 F. Supp. 2d 270, 279-80 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## Administrative Proceedings

*In the Matter of Encore Capital Group, Inc., Midland Funding, LLC Midland Credit Management, Inc. and Asset Acceptance Capital Corp.*, Administrative Proceeding 2015-CFPB-0022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

iv

**State Cases**

*In re Stralem*, 303 A.D.2d 120, 122, 758 N.Y.S.2d 345 (2d Dep't. 2003)  . . . . . . 29

*R/S Assoc. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 33, 771 N.E.2d 240, 744 N.Y.S.2d 358, 360 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**Federal Statutes**

15 U.S.C. § 1692, et. seq.,  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 23

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Court Rules**

FRAP 4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fed. R. Civ. P.* 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E.D.Mich. LR 5.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**State Statutes**

72 Del.Laws. c.401, § 9-109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 n. 3

N.Y. U.C.C. 9-109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 n. 3

M.C.L.A. 445.251  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

M.C.L.A. 440.9109(4)(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 n. 3

S.D. 57A9109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 n. 3

U.C.C. 9-109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

U.C.C.  9-318(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Unpublished and Electronically Published Decisions**

*Coppock v. Citigroup, Inc.,* 2013 U.S. Dist. LEXIS 40632 (W.D. Wash., Mar. 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

*Hunter v. Mary Jane Elliott,* 2014 U.S. Dist. LEXIS 89159 *5-6 . . . . . . . . . . 21

*Martin v. Calvary* SPV I, LLC, No. 13-88, 2014 Dist LEXIS 43293 (E.D. Ky. March 31, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ross v. Bank of Am., N.A. (USA) (In re Currency Conversion Fee Antitrust Litig.), 2010 U.S. Dist. LEXIS 146028,p 3 of 5, and  fn 1* (S.D.N.Y. July 29, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Severstal Dearborn, LLC v. Cliffs Sales Co.*, 2013 U.S. Dist. LEXIS 109291, *2-6 ( E.D. Mich. Aug. 5, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan,*  2016 U.S. App. LEXIS 10264, 2016 WL 3163073, at *4 (6th Cir. June 7, 2016) . . . . . . . . . . . . . . . . . . . 32

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The following issues could be substantially clarified with the aid of questioning from the Court of Appeals.

Compelling is the question of what constitutes the transfer or assignment of an entire or whole arbitration agreement in order to compel arbitration of disputes between debtors and debt collectors and the parameters of the court's function in acting as gatekeeper.  At issue is interpretation of purchase agreements between the original creditors and the debt collectors.  Appellants contend that  the arbitration agreements at issue at bar were never assigned or transferred by the original creditors.

Another question is the use of exemplar agreements, authenticated by a party who did maintain and keep either the exemplars or any original alleged agreements in the ordinary and regular course of business, especially where their transfer or assignment is at issue. The reliability of exemplar agreements, given the terms of purchase agreements and even settlement agreements pertaining to them, is a significant  issue. This is especially germane because the existence of the real agreements may never be demonstrated.  This will be an issue that arises in consumer transactions again and again.

Also needed is direction to lower courts on whether Article 9 applies at all when the transfers are not secured transactions and the transfers are for the purpose of debt collection, specifically excluded from Article 9 treatment. Delegating that question to an arbitrator is an ultimate question concerning the transfer of the whole agreement in violation of the district court's gatekeeper function.

## STATEMENT OF JURISDICTION

The District Court and this Court have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1692, *et. seq.*, Fair Debt Collection Practices Act [FDCPA]. This is an appeal from the Order To Compel Arbitration and To Dismiss Without Prejudice entered May 16, 2016. Although the dismissal was without prejudice, the Order disposes of Appellants' ability to pursue their claims in the Federal District Court. This Notice of Appeal was timely filed on May 20, 2016.  FRAP 4(a)(1).

## STANDARD OF REVIEW OF ALL ISSUES

The standard for review of an order compelling arbitration is *de novo*. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000), *cert. denied*, 531 U.S. 1072, 148 L. Ed. 2d 664, 121 S. Ct. 763 (2001); *Morrison v Circuit City Stores*, 317 F.3d 646, 665 (6 Cir. 2003).

The standard for review of the issue of the sealing of documents is abuse of discretion.  *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176 (6th Cir. 1983).

## STATEMENT OF ISSUES

Whether the district court erred in granting the Appellees' Renewed Motion To Compel Arbitration And Dismissing The Case Without Prejudice. The district court improperly did not perform its gatekeeper function and instead sent all issues to the arbitrator for determination.

Third party records were proffered by Appellees when they were not maintained in the regular, customary and ordinary course of business.

Appellees claimed that Appellant McIntyre agreed to arbitration as a result of  exemplar Chase bank arbitration agreement, printed between 2007 and to 2009. However, by relying on exemplar documents, Appellees did not demonstrate that the sample credit card agreements were in fact the same agreements issued by Chase bank's and, in effect, at the point of the assignment of Chase bank's debts for collection to Appellees.

There were two separate ways in which Appellees were  not to have received by assignment any arbitration agreement:

In the Chase bank purchase agreement, Appellees expressly agreed to refrain from enforcing any arbitration provision for delinquent accounts purchased for collection under the Chase bank purchase agreement.

In the settlement of a class action antitrust action,  Chase bank agreed not to

enforce any arbitration agreement. Although the latter applied for three years from the date of settlement, the agreement did not permit retroactive application of the same arbitration agreements it agreed not to implement once that period expired.

The district court referred the issue as to whether the Article 9 of the Uniform Commercial Code, specifically U.C.C. 9-318, applied to allow for transfer of the entire arbitration agreement, and, thus, delegated to the arbitrator the ultimate question of the whether the Appellees acquired the arbitration agreements at all.

The district court should not have denied Appellants' Motion To Unseal Documents when none of the stringent requirements justifying sealing were present, putative class members were  denied the right to review significant documents, only old commercial contracts were involved, and Appellees had not filed a motion requesting leave to seal when Appellants' did not concur with the sealing.

 The court failed to consider the challenge to the validity of the arbitration agreements before ordering compliance with the agreement.

## STATEMENT OF THE CASE

This case involves the question of whether Chase Bank U.S.A., N.A. ["Chase"] and Citbank (South Dakota), N.A. *n/k/a* Citibank, N.A. ["Citibank"] transferred

3

arbitration agreements to Appellees precluding them from proceeding with their claims and those of a putative class in federal court.

The district court mistakenly concluded that Appellants were challenging the validity of the entire credit card agreement as opposed to challenging the entire arbitration agreement.  Opinion and Order Granting Defendants' Motion To Compel Arbitration and Dismiss Action Without Prejudice,  *R* 59, Page ID ## 1938-1947. Unexamined by the opinion was whether one of the banks, Chase Bank abolished its arbitration agreement  for cardholder accounts retroactively by settlement agreement in another class action, and, accordingly, during the relevant time period, possessed no arbitration agreement to assign.

There is no question in this case that Appellants were challenging only the validity of the transfer of the arbitration clause, not the validity of the rest of the terms of the credit card agreements or the credit card agreements as a whole.  Neither Appellant ever denied that he obtained a credit card from banks, and used it.  Neither Appellant denied that he was subject to the terms of the interest rates, the calculation of interest by the banks or the charge off of the interest of the debts. *e.g.,* Second Amended Complaint*, R* 25 Page ID ## 217, 223 and 225. Neither Appellant claimed he was not a debtor nor the banks were not the original creditors. *id*.  Neither Appellant challenged the charges on the credit cards, only whether Appellees had the

4

right to add charged off interest. Second Amended Complaint, *R* 25 Page ID ## 218-219.  Neither Appellant claimed that the original creditor did not have the right to assign his debt to the debt collector Appellees. *See, e.g.,* Second Amended Complaint, *R* 29 Page ID ## 713-714; *R* 63 Page ID # 2051. Neither Appellant challenged the authenticity of the bills of sale.

What Appellants challenged was whether the arbitration agreements were assigned to the debt collector Appellees.  As Ms. Vocht said at oral argument "If the entire agreement is not valid, not just the provision of the arbitration agreement, if he -- and we've briefed this in the original brief -- if the entire agreement is invalid, this Court -- the arbitrator is not entrusted to determine that. If the provision of the arbitration agreement is invalid, then an arbitrator may have that authority to just interpret that provision. **In this case we're challenging the entire arbitration agreement. We don't believe it was transferred."** Transcript 05/11/2016, *R* 63 Page ID 2050-2051. [Emphasis added]

The threshold question is whether Appellees showed that a valid agreement to arbitrate the dispute existed between the parties. Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that

5

agreement. *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

Appellants argued that the entire arbitration agreements were never transferred and, therefore, not enforceable as a whole. Consequently, the issue was not the nature or the contents of the arbitration agreements, but whether they could be applied to Appellants in view of the lack of assignment of them to Appellees. Appellants never argued that there were provisions in or parts of the arbitration agreements, themselves, that were not enforceable. Nor did Appellants argue that the purchase agreements did not transfer the right to collect debts pursuant to the terms of those agreements or pursuant to the bills of sale. In looking to the terms of the agreements, Appellant specifically stated that the arbitration agreements were not transferred. Whether or not other terms of the card agreements as a whole were valid was never raised before the court, and is not at issue in this appeal.

Consequently, the district court transformed the question of whether the arbitration agreements were transferred to a challenge to whether the entire credit card agreements were transferred, and left the question of whether the arbitration agreements, as a whole, were ever transferred, for the arbitrator to decide. Opinion and Order Granting the Renewed Motion To Compel Arbitration, *R* 59, Page ID #

6

1946-1947. The mistaken enmeshment of those issues, interpretation and enforceability of terms of the credit card agreement, either in part or as a whole, and whether the arbitration agreements were indeed transferred led the court to refrain from its review of determining whether the dispute is arbitrable and whether valid agreements to arbitrate existed between the parties. *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The court was only to look at whether the arbitration agreements at issue were enforceable. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). It did not.

If the arbitration agreements, as a whole, were not enforceable, the forum to decide any other claims presented by Appellants was the district court because there was no arbitration or arbitrator to decide any other claims. Therefore, the Court's failure to determine whether the arbitration agreements were, themselves enforceable, and leaving that determination of the overall arbitration agreement enforceability to the arbitrator was error.

The final issue is whether the district court abused its discretion when it permitted the sealing of commercial agreements that were five to six years old without examining the required factors for constitutional sealing of record documents.

On 9/3/2015, Appellees and the United States Consumer Protection Bureau [USCPB] signed a Consent Order, *In the Matter of Encore Capital Group, Inc.,*

*Midland Funding, LLC Midland Credit Management, Inc. and Asset Acceptance*

*Capital Corp.*, Administrative Proceeding 2015-CFPB-0022, whereby certain important facts were admitted regarding Appellees' practices.  Appellees accepted jointly defined facts and admitted their interrelations with each other. Consent Order, *R 29-2,* ID # 738-740, 797. Consequently, in the Consent Order, when reference was made to Encore, all appellees were referenced as well. Consent Order, *R* 29-2, Page ID## 739-740.  Appellants incorporate the admitted facts and definitions stated therein, and highlight the following:

A.    Encore purchases portfolios of old consumer debt from some of the Nation's largest consumer finance and telecommunications companies, and from other debt buyers, for pennies on the dollar. These debts primarily consist of charged-off consumer credit card and telecommunications.  Consent Order, *R* 29-2, Page ID# 738-739.

B.    Encore sends off consumer information to credit bureaus, and sues consumers in state courts across the country. *The vast majority of the debt collection lawsuits Encore files go unanswered by Consumers and result in default judgments.*  Consent Order, *R* 29-2, Page ID #740.

C.    When Encore purchases debt portfolios, it typically receives an electronic spreadsheet, sometimes referred to as a "data file," from the

8

seller that includes information about the consumer, such as name, address, social security number, and information about the debt, including the purported amount of the debt, contract interest rate, and dates of origination and default. Consent Order *R* 29-2, Page ID #741.

D.    Sellers disclaim the accuracy and enforceability of debt they sold to Encore. Encore's purchase agreements with debt sellers have typically limited, in varying degrees, the seller's responsibility for the accuracy and validity of the accounts in question. For example, a purchase agreement between [Encore] and one large credit card issuer informed Encore that the account balance for over 35,000 individual accounts for sale in that transaction was an approximation: current balance means the approximate unpaid balance. [Encore] acknowledges that the figure provided as the current balance for any loan may include interest, accrued or unaccrued, costs, fees, and expenses, and it is possible that the figure provided as the current balance for any loan may not reflect credits for payments made by or on behalf of any obligor prior to the cutoff date. Consent Order, *R* 29-2, #740-742.

E.     The facts under consent demonstrate flaws, misrepresentations and evidentiary defects in the documents and purchase agreements and

affidavits/declarations pertaining to Encore's debt buying and selling. Consent Order, *R* 29-2 Page ID # 746-747, 749-750, 792-793.

The USCPB considered Appellees' purchase agreements and cite directly to portions of purchase agreements such as the ones Appellees filed under seal below. Consent Order, *R* 29-2 Page ID # 9.

Many, if not all of the defects determined by the USCPB are present in this case.

Appellees are collection firms, and their entire purpose is to buy and to collect old debts of debtors. Consent Order, *R* 29-2 Page ID #738.  They are not agents of any bank or financial institution.

### MCINTYRE–CHASE

Mr. McIntyre opened his Chase account on September 20, 2007 and it was charged off on August 31, 2010.  Data Table, *R* 27-8 Page ID # 637.  Appellees sent Mr. McIntyre a "Pre-Legal Notification", dated January 28, 2015, for a Chase credit card debt demanding that he pay $2,615.11. Pre-Legal Notification, *R* 25-3 Page ID #248-249.  On March 24, 2015, Appellant received a letter from a law firm, Weltman, Weinberg & Reis, Co., L.P.A., employed by Appellees, demanding that Mr. McIntyre pay $2,303.97. Demand Letter *R* 25-4 Page ID # 251.

10

In its first motion to compel arbitration, Appellees proffered a 2007 sample Chase Arbitration Agreement unattached and unconnected to Mr. McIntyre and represented that had Mr. McIntyre signed one, that is one he would have signed. Sample Agreements, *R* 27-8 Page ID # 641-656. Mr. McIntyre's original application and documents were never produced nor authenticated. That is also true of the second motion. Renewed Motion To Compel, *R* 39-9 Page ID #1290-1307. The Appellees did not proffer the original documents, applications and agreements. Rather, they proffered Michael Burger's Declaration who represented he was an employee of Appellees. Burger Declaration, *R* 39-2 Page ID # 942. Mr. Burger admits that he was reviewing and interpreting records allegedly made by other companies, including Chase. Burger Declaration *R* 39-2 Page ID #943. There was no declaration or affidavit presented by any Chase employee affirming or authenticating any records to Mr. McIntyre's original application, agreement or disclosures.

The Appellees presented a bill of sale and affidavits in support of their contention that the exemplar arbitration clause had been transferred to them. Bill of Sale and Affidavits *R* 27-8 Page ID # 634-640. The Appellees attached a March 28, 2011, Purchase Agreement[1] between Chase and Appellees to their Renewed Motion.

---

[1] This document was sealed, over objection of Appellants. All the initially sealed documents were filed together under Sealed entry 40. Therefore, since Appellants do not know the Page ID, they also supply the exhibit letters for page

What the Appellees purchased were thousands of spreadsheet data files. Motion To Compel, *R* 27-8 Page ID # 634-640; Sealed entry 40, (Ex M), Page 5.  Nowhere is Mr. McIntyre's account expressly referenced in the contract documents or bill of sale or accompanying affidavits to that transaction. Appellees never produced an executed financing statement like the one that was permitted in Sealed entry 40 (Ex M) Page 22, and there is no evidence that the transaction between Chase and Appellants was actually a secured transaction. Bill of Sale, Closing Statement, Affidavits of Sale, *R* 27-8 Page ID # 634-640.  Appellants do not declare that the purchase was a secured transaction nor were any perfected secured transaction documents referenced or attached.  *R* 39-2 Page ID # 948-950.

Chase eliminated its arbitration agreement in 2009 for all current and past consumers then holding its card as part of the *Ross, el al.* v. *Bank of America, NA. (USA), et at.,* S.D.N.Y. Case No. 05 CV 7116 case.  *R* 29-11 Page ID # 825-*829; Approved,  Ross v. Bank of Am., N.A. (USA) (In re Currency Conversion Fee Antitrust Litig.), 2010 U.S. Dist. LEXIS 146028,p 3 of 5, and  fn 1* (S.D.N.Y. July 29, 2010). *R* 29-12, Page ID # 832-836.  Mr. McIntyre held his Chase card in 2009 and was subject to the *Ross* abrogation of any arbitration agreement in his credit agreement. Closing Statement, *R* 27-8 Page ID # 637.

---

reference.

## THE CITIBANK ACCOUNTS

Appellees did not have any invoices, applications, original agreements or disclosures for either Mr. McIntyre or Mr. Danley, and had to subpoena whatever may have existed from Citbank. Citbank Letter and Subpoena with attachment, *R* 29-5 Page ID # 809-812.  Initially, Citibank was only able to produce invoices.  Although Appellees asked for the card member agreements, applications and disclosures, none were ever produced and proffered.

Originally submitted by Appellees were bills of sale and affidavits.  Bills of Sale and affidavits*, R* 27-8 Page ID # 629-632; R 27-1 Page ID #314-329.  All bills of sale and assignments refer to specific purchase agreements.  In their renewed motion, Appellees proffered the Citibank purchase agreements.  Sealed entry 40 (Ex A, C, I,).

On the face of the documents, the only thing that may actually have been transferred or assigned is an electronic statement of a debt. e.g., Sealed entry 40 (Ex C) Page 2; Sealed entry 40, (Ex I) Page 1; Motion to Compel Arbitration, *R* 27-8 Page ID # 630-631.  The accounts transferred are not specified.  Nowhere are Appellants' accounts expressly referenced in the contract documents or bill of sale or accompanying affidavits to that transaction.

No evidence was presented that any Citibank transaction was a secured

transaction or that any security interest had been perfected.

## McIntyre-Citibank

Mr. McIntyre opened a Chase Home Depot account on September 25, 2003. Motion To Compel Arbitration, *R* 27-8 Page ID # 330.

Pursuant to a purchase agreement, dated November 23, 2010, Citibank transferred charged off Home Depot account debts to Appellants.  Sealed entry 40 (Ex I) Page 1; Motion To Compel Arbitration, R 27-8 Page ID # 314-329. Appellees sent Mr. McIntyre a "Pre-Legal Notification", dated October 31, 2014, in an effort to collect $2,615.11 from him. Pre-legal Notification,  *R* 25-2 Page ID # 244.  On February 11, 2015, Appellees, using the  law firm, Weltman, Weinberg & Reis, Co., L.P.A., sued Mr. McIntyre for $2,444.37 in state court. Demand Letter, *R* 25-1, Page ID # 229.

## Danley-Citibank

Appellant Danley opened a credit card with Citibank on April 6, 2009. Renewed Motion To Compel Arbitration, *R* 39 Page ID 915; Amended Complaint, *R* 25-1 Page ID # 235.  Citibank charged off the debt on March 16, 2010. *id*. Appellees sent a collection letter, dated October 17, 2014, to Mr. Danley in an effort to collect a "current balance" of $6,627.26. This "current balance" reflected a "previous

balance" of $4,536.34, and "accrued interest" of $2,090.92. *R* 25-1 Page ID # 233-234.   On February 5, 2015, Appellees filed suit against Mr. Danley for an alleged credit card debt balance of $4,536.34.  *R* 25-1 Page ID #230-231.

In their original motion papers, Appellees produced a bill of sale and assignment between Thunderbolt Holdings LTD, LLC [Thunderbolt] and Citibank relying on a March 25, 2013 purchase agreement that was not produced. *Bill of Sale, R* 27-1 Page ID 314-315.  With their renewed motion, Appellees submitted a March 25, 2013 purchase agreement. Sealed entry 40 (Ex A).  Also submitted was a March 29, 2013 account purchase agreement between Thunderbolt and Appellees.  Sealed entry 40 (Ex C). That agreement was referenced in the bill of sale, previously produced by Appellees, from Thunderbolt to Appellees. Bill of Sale, *R* 27-1 Page ID # 318-319.  Appellees produced a purchase agreement, dated March 29, 2013 between Thunderbolt and Appellees.

15

## SUMMARY OF ARGUMENT

Appellants contest that there was an valid assignment of either the Chase or Citibank arbitration agreements. Appellants contest the sealing of documents permitted by the Court. by Order.

## ARGUMENT

**THE CHASE AGREEMENT, IN COMPORT WITH ITS AGREEMENT  IN *ROSS,* SPECIFICALLY RESERVED ASSIGNMENT OF THE ARBITRATION AGREEMENT RENDERING THE ARBITRATION AGREEMENT UNENFORCEABLE**

The district court erred in delegating to the arbitrator whether that the Chase to Appellees' Purchase Agreement Section 4, Sealed entry 40, Pages 2-20, transferred an entire abrogated arbitration agreement to Appellees.  Opinion, *R* 59 Page ID # 1944, 1947.

Appellees argued that pursuant to a purchase agreement with Chase, Sealed entry 40, Ex M,  the arbitration agreement was enforceable. Reply Brief, Sealed entry 57, Page 4-7.

There was no denying that Chase, in settling the class action, *Ross, et.al. v. Bank of America, N.A. (USA), et. al.* S.D.N.Y. Case No. 05 CV 7116, settlement

agreement, *R* 29-11 Page ID # 825-*829* agreed that it would remove all terms and conditions requiring  arbitration within three and one half years following January 1, 2010, and that Chase would not seek to enforce arbitration agreements based on *currently existing or pre-existing consumer* credit card agreements as of the date of the settlement.  Appellant McIntyre's card agreement began when he obtained his card, Motion To Compel Arbitration, *R* 27-8 Page ID # 330, and he was in the pre-existing period and fell under settlement agreement.

Appellees tried to apply the three and one year sunset provision retroactively to the duration of a precluded transfer or assignment of the arbitration agreement and to resurrect an arbitration agreement vacated from Appellant McIntyre as a pre-existing cardholder during the relevant time of the *Ross* agreement.  It also tried to apply the three  and one half year sunset provision going forward to Appellant McIntyre even though he was longer a cardholder and could not have an arbitration agreement with Chase, at the time of the purchase.  In short, it was impossible to reinstate a vacated arbitration agreement especially where a new agreement was never made while Chase and Appellant McIntyre were in contractual relationship. Appellant McIntyre no longer had a Chase card at the point of the purchase agreement.

The district court did not analyze the Chase purchase agreement Section 4 in light of *Ross*.  When read in the context of *Ross*, the intent of the parties is clear.

17

The Chase purchase agreement, Sealed entry 40, page 8 has a stand alone sentence on the top of page 9 which reads "**Purchaser agrees that it will not attempt to enforce any rights it may otherwise have under any arbitration clauses that may appear in Seller's Cardholder agreements**". Cited in Opinion, *R* 59, Page 1947; *also see*, Transcript, R 63 Page ID ## 2048-2049.

This statement is set forth separately from those applying to the warranties, and is not a warranty or representation.  Unlike the warranties, it is not conditional.

The relevant Section of the warranty and representation provisions in the Agreement starts with a sentence at the bottom of Sealed entry 40, Page 7 which states "Purchaser represents and warrants to Seller, as of the date hereof and as of each closing date as follows:..."  This phrase is followed on page 8 by subparagraphs (a) through (g), which are representations and warranties.  Subparagraph (h) provides that the "representations and warranties" will survive until the second anniversary of the agreement.

The arbitration provision is presented independently of the representation and warranty section and is its own term of agreement.

Like many warranties, these, too, were limited temporally.  Transcript, *R* 63 Page ID ## 2047-2048.  Rather than the arbitration elimination ending after the two

18

year period, it was the warranties to which that sunset applied. Neither the preclusion from transfer nor an arbitration agreement are warranties or representations.

When read in light of *Ross* it is clear why the sentence was included in the agreement, and included in this way. Chase gave up arbitration rights in *Ross*. And when analyzing the purchase agreement made between Chase and Appellees, involving the sale of debts, Chase did not have an arbitration agreement to assign. In order to comply with its agreement in *Ross*, Chase could not have Appellees enforce a non-existent Chase arbitration clause.

If the parties were able to sunset anything more, they could have written the agreement differently, but they could not, in view of *Ross.*

Appellees produced no documents setting forth either a modification of the sunset provision applying it to the arbitration agreement. Accordingly, Chase could only argue that the two-year bar applied to arbitration, a position belied by the plain language of the *Ross* agreement. Whether going-forward Chase could make arbitration agreements as part of its contract three and on half years after its *Ross* settlement agreement is of no moment to this case.

But, it is not an issue that should have been left to the arbitrator to decide.

**THE DISTRICT COURT MISTAKENLY CONCLUDED THAT AN UNAUTHENTICATED EXEMPLAR ARBITRATION AGREEMENT, WHOLLY DEVOID OF ANY CONNECTION TO APPELLANT MCINTYRE'S CHASE ACCOUNT AND AUTHENTICATED BY AN EMPLOYEE OF APPELLEES WAS SUFFICIENT TO COMPEL ARBITRATION AGAINST APPELLANT MCINTYRE'S CHASE ACCOUNT.**

A heavy and unjust burden was placed on the "least sophisticated consumer[2]", to retain fine print documents or to be aware of the necessity of retaining such documents in order to oppose the effectiveness of exemplar arbitration agreements.

During oral argument, Transcript, *R* 63, Page ID # 2031, Appellees, relying on *Coppock v. Citigroup, Inc.*, 2013 U.S. Dist. LEXIS 40632 (W.D. Wash., Mar. 22, 2013), asked the court to place the burden on the credit card user to prove that the exemplar agreements are not the ones governing his account. [The *Coppock* court appeared to be annoyed with that plaintiff's counsel, noting they "lifted almost all of her brief and almost verbatim from the brief filed by the plaintiffs" in another case.

---

[2] Courts must view any alleged violation through the lens of the "least sophisticated consumer," see *Smith v. Transworld Sys. Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)--the usual objective legal standard in consumer protection cases, see *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id*. *Gionis v Javitch, Block & Rathbone, LLP*, 238 F App'x 24, 28 (6th Cir. 2007)

*Id.* At fn. 1 Such concerns do not exist at bar.]

The use of the exemplar arbitration agreements at bar was significant. A party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists by a preponderance of the evidence. Such agreements are challengeable for fraud, mistake, duress, or other such contractual grounds. *McMullen v. Meijer, Inc.,* 355 F.3d 485, 491 (6th Cir. 2004).

The party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a standard mirroring that of summary judgment in a civil suit. *Great Earth  Cos.v. Simons*, 288 F. 3d 878, 889 (6th Cir. 2002).  In regard to Appellant McIntyre's Chase Account, Appellees did not produce an authenticated written arbitration agreement, nor could they point to which of five exemplar arbitration agreements. All they presented was a 2007-2009 unauthenticated exemplar cardmember agreement for a time period prior to the *Ross* Settlement vacating all pre-existing and current arbitration clauses for three and half years from January 1, 2010. Exemplar Agreements, *R* 39-9, Page ID ## 1292-1296.   It is axiomatic that the 2007-2009 arbitration agreements waived any property rights in those agreements. *Hunter v. Mary Jane Elliott,* 2014 U.S. Dist. LEXIS 89159 *5-6 (Jonkers, J.) (Submission, for example, must demonstrate it was in effect at the critical time.)

21

What little effort made to attach any significance or to authenticate those agreements by Mr. Michael Burger, a Manager of Operations for Appellees, who did his best to authenticate the Chase exemplar arbitration agreements. Burger Declaration, *R* 59, Page ID# 1946. This satisfied the district court, even though Mr. Burger did not identify which exemplar arbitration agreements supposedly implicated Appellant McIntyre.

In actually, no Chase employee attested these were their business records kept in the regular and ordinary course of business, and that they were in effect after the Chase settlement or even at the point of assignment of Appellant McIntyre's debts to Appellees. No agreement referred expressly to Appellant McIntyre. No Chase employee attested that the documents applied to Appellant McIntyre, nor was there any evidence at bar that they were in effect during any time during which Appellant McIntyre had his account with Chase.

However, while Appellant did not demonstrate that the exemplar was not his agreement, the court did not require that Appellees to complete the circle and do so. The district court did not, for example, require Appellees to produce all agreements in effect during the requisite period, nor any evidence that in fact Appellant had received that particular agreement. Instead, the court improperly placed the burden on Appellant to demonstrate that the exemplar agreements produced were effective.

22

**THE UNIFORM COMMERCIAL CODE DOES NOT APPLY TO LEGITIMIZE THE TRANSFER OF ARBITRATION AGREEMENTS FOR COLLECTION PURPOSES ONLY**

To be clear, Appellees are debt collectors. 15 U.S.C. § 1692a(6); M.C.L.A. 445.251; Consent Order, *R* 29-2 Page ID #738. Appellees' entire purpose is to buy and then to collect old debts of debtors. Encore 2015 10-K, *R* 25-7, Page ID 260. They perform collections themselves or employ other firms for that work. Appellants First Response to Original Motion to Compel Arbitration, Encore 2015 10-K, *R* 25-7, Page ID # 261. In this case, Appellees acted as their own collection agents, and then hired law firms to take legal action. They are not banking, lending or financial institutions. *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2nd Cir. 2015) cert. den. ___US___; 136 S Ct 1484; 194 L Ed 2d 547 (2016).

Appellees presented no perfected security agreement, promissory note, secured note, chattel, or U.C.C. security filing, entered into by Citibank or Chase with the Appellees so to secure any loan or transfer of property, services or goods.

Appellees' arguments were made in the face of U.C.C. 9-109(4)(e) providing that Article 9 of the U.C.C. *does <u>not</u> apply* to the assignment of accounts, chattel paper, payment tangibles or promissory notes that is *for the purpose of collection only*.

In their brief, Reply, Sealed entry 57 at pages 4-6, Appellees argued that the arbitration agreements were transferred pursuant to the Uniform Commercial Code[3] [U.C.C.]. and, therefore, despite the express language of the Chase agreement forbidding transfer of any arbitration agreement, the arbitration agreement was transferred anyway and, therefore, is enforceable.  In support of this contention, Appellees cite an  unpublished decision, *Martin v. Calvary* SPV I, LLC, No. 13-88, 2014 Dist LEXIS 43293 (E.D. Ky. March 31, 2014).  Reply, Sealed entry 58 pages 3-4 and, 58-5, Ex. 4.

In *Martin*, the court relied solely on the language of U.C.C.  9-318(1)(a), which provides the rights acquired by an assignee to accounts receivable are subject to (a) All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and (b) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment. *Martin,*

---

[3] The parties agree there is no choice of law issue here since the U.C.C. is identical in all potential jurisdictions governing the Chase and Citibank arbitration agreements, Delaware, 72 Del.Laws. c. 401, § 9-109, South Dakota, S.D. 57A9109 and Michigan, M.C.L.A. 440.9109 have adopted the U.C.C. Trans 05/11/2016, *R* 63 2045-2946; Reply, *R* 57, p 5 fn 6 and New York N.Y. U.C.C. 9-109(d)(5).   and have the exact same language pertaining to the exclusion of debt buying for collections as excluded as a secured transaction.  Unlike the Chase arbitration agreement, the purchase agreements for Citibank are to be construed under New York law.

p 15-16. None of the cases cited in *Martin* in support of its ruling involved debt collectors such as are Appellees. *See*, e.g., *Nat'l City Bank, Northwest v. Columbian Mut. Life Ins. Co.*, 282 F.3d 407 (6th Cir. 2002) (Contractual set-off for unpaid premiums based on a perfected security agreement); *GMAC Commer Credit LLC v Springs Indus*, 171 F Supp 2d 209 (S.D.N.Y. (2001)(Purchase orders and security agreements involving the purchases of rugs) and *Banque v. Amoco Oil Co.*, 573 F. Supp. 1464 (S.D.N.Y.)(Exchange agreement of crude oil with perfected security agreement). There was no understanding, discussion or analysis of the express language in U.C.C. 9-109(4)(e), involving debt collectors whatsoever. The court in *Martin* by not recognizing U.C.C. 9-109(4)(e), used Article 9 and U.C.C. 9-318(1)(a) in a debt collection case.

The question of whether the arbitration agreements were assigned and enforceable is not to be solved by looking to the U.C.C., Article 9, governing secured transactions, because Article 9 simply does not apply. Indeed, the purchase agreements by Citibank expressly declaim that they are security agreements. Sealed entry 40, Citibank and Thunderbolt purchase agreement Ex A, (paragraph 6.8), p 11; Citibank and Appellants purchase agreement. Sealed entry 40, Ex I, (paragraph 6.8), Page 11.

**CITIBANK SPECIFICALLY TRANSFERRED ONLY THE "ACCOUNTS", AND SPECIFICALLY RETAINED OWNERSHIP OF THE "ACCOUNT DOCUMENTS", INCLUDING BUT NOT LIMITED TO ANY APPLICATION, AND ORIGINAL CONTRACT DOCUMENTS WITH THEIR TERMS ALLOWING FOR ARBITRATION**

The only question before the district court was whether there existed a valid arbitration agreement. The issues of the validity of the amount of debt or the interest were acknowledged to be left to the trier of fact--no matter who that trier was deemed to be. The meaning of the rights, terms and conditions attached to the sale of the debts, themselves (i.e., was it deceitful for Appellees to try to collect charged off interest?), was one of the ultimate issues in the case, itself. The court interposed the ultimate triable issue and substituted it for the issue before the court, the validity and enforceability of the arbitration agreement. Appellants claimed that the arbitration was never transferred or assigned and, therefore, was enforceable against the Appellants by the Appellees.

The purchase agreements between Citibank and Appellees and Citibank and Thunderbolt provide that New York law will govern. sealed entry 40, Exhibit I (paragraph 12.1), p 15; Exhibit A (paragraph 16), p. 10.

Under New York law, when the terms of an agreement are clear and unambiguous, the court is not to look beyond the "four corners" of the agreement, and

26

parol evidence of the parties' intentions is inadmissible. *R/S Assoc. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 33, 771 N.E.2d 240, 744 N.Y.S.2d 358, 360 (2002); extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face. *id. Seiden Assocs v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2nd Cir. 1992).

The language in the Citibank purchase agreements is unambiguous.

The Citibank purchase agreements, sealed entry 40, ex I, p. 1 and A, p. 1, are essentially identical. The agreements do not sell the original contract documents from the cardholder to the buyers. Citibank's charged-off accounts and receivables summarized on the Asset Schedule and final electronic files were sold. The purchase agreements "sell, assign, and transfer" to Appellees and to Thunderbolt "all rights, title and interest" of the Bank in and to debts. sealed entry 40, ex I, p 2 and A, p 2. The terms, rights, title and interest are the debts–money owed. The debts are sold "as is". sealed entry 40, Ex. I, p. 7 and A, p. 7.

Citibank retained the ownership and did not sell the "account documents". sealed entry 40, Ex. I, p. 9, and Ex. A, p. 9. They remained the "exclusive property" of the Bank. *id.* The account documents are the contract documents defined in sealed entry 40, Ex. I, and Ex. A. The account documents provided or did not provide (the applications and originating documents were never produced to the court) for

27

arbitration. sealed entry 40, Ex I, p 9, and Ex. A, p 9 clause provisions.  The only thing that defendants have is a "limited right" to use documents to corroborate their right of recovery of the debts Appellees and Thunderbolt bought.

Thunderbolt transferred to Appellees the debts it bought pursuant to the Thunderbolt and Appellees Purchase Agreement. sealed entry 40, Ex C, p. 1, 2. Appellees bought the purchased accounts and an electronic Encore Excel data file. sealed entry 40, Ex. C, Page 2.

Appellees agreed to be bound by the "limitations' in the original purchase agreement.  sealed entry 40, Ex. C, Page 8.

Appellees received all rights, title and interest in the debts represented on data sheets. The arbitration agreements stayed with Citibank, and were not transferred to either Thunderbolt or Appellees.  There is nothing in the purchase agreements, bills of sale or corresponding Citibank affidavits of sale that says that the terms, conditions or provisions of the account documents were transferred. Bill of Sale Citibank to Appellees and accompanying affidavits,  *R* 27-8 Page ID # 629-631; Bill of Sale to Thunderbolt with accompanying affidavits, *R* 27-1 Page ID ## 314-318. The account documents are the only places where the arbitration agreements exist. In the case at bar, Citibank's assignment of the debts, alone, was qualified by the retention of ownership in the underlying account documents.

28

Under New York law, "'An assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, or chattel, or other thing.'" *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 320 (S.D.N.Y. 2013) (quoting *In re Stralem*, 303 A.D.2d 120, 122, 758 N.Y.S.2d 345 (2d Dep't. 2003)). An assignee "stands in the shoes" of an assignor and thus acquires the assignor's right" to bring suit for collection of monies owed to the assignor. *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 966 F. Supp. 2d 270, 279-80 (S.D.N.Y. 2013) (citing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 284-85, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008).

Present in this case is only an assignment of account data files, and rights, title and interest in those accounts, the debts, alone. The assignment is not unqualified because Citibank held back, and did not transfer or assign ownership of the documents containing the arbitration agreement. sealed entry 40, Citbank and Appellees Purchase Agreement, Ex, I, p. 9. The Appellees had the "limited right" to borrow account documents solely for lawful recovery of the debt. *Id*. Borrowing the documents for verification of the amount of the debt for recovery purposes, and an assignment of the documents, including arbitration agreements, are two very different things. Indeed, Appellees were required to destroy any account documents they received. *Id*.

29

Appellees submitted the declaration of Citibank's representative, Cathrine R. Reineke.  Reineke Declaration, *R* 39-10 Page ID # 1358-1361.  Ms. Reineke reviews the records and account documents which Citibank, including the arbitration agreement of which Citibank retained ownership and maintained in the ordinary and regular course of its business. Attached to her declaration are the account documents Citibank did not assign and, including,  most importantly, an exemplar arbitration agreement. Exemplar agreements, *R* 39-10 Page ID # 1363-1378.  Ms. Reineke was responding to a subpoena issued by Appellees to Citibank. Reineke Declaration, *R* 39-10 Page ID # 1358-1359.

Ms. Reineke did not declare that the account documents, including the arbitration agreement, are owned by Appellees or were transferred and assigned to Appellees.  That is because they were not.

## PERMITTING THE TRUNCATED COURT PROCEEDINGS TO BE MAINTAINED UNDER SEAL VIOLATES THE PRINCIPLE OF OPEN JURISPRUDENCE

In the case at bar, apparently Appellees called the court and spoke to a case manager looking for the procedure to use to file under seal.  Response to Motion to Unseal,  *R* 47 Page ID. # 1641; Exhibit to Response, *R* 47-3 Page ID. # 1670.   The clerk gave permission to file under seal. *id.* That same day, March 14, 2016, the documents were filed under seal. This was not the procedure contemplated by the

30

protective order entered in the case, Protective order, *R* 37 Page ID. # 6, or under precedent. In fact, pursuant to the protective order, preparing for and conducting litigation made confidential documents open. Protective Order, *R* 37 Page ID ## 3-4. Leave of court was expressly provided for in the protective order before documents could be filed under seal. Protective Order, *R* 37 Page ID # 6. The proposed stipulation submitted to Appellants' counsel only relied on statutory authority to seal Appellants' account records, despite their already being a matter of public record. *R* 47-2 Page ID ## 1650-1668; Exhibit 2 to Response to Unseal Motion, *e.g*., *R* 27-2 Page ID. ## 350-392. The notice and brief were not filed with the court except as an exhibit. Appellants had the right not to concur. Without precedent or reflection on either the express language of the protective order or the local court rules, or even the proper authority to seal documents that were 5-6 years old and claimed only commercial secrecy, the court's opinion placed the responsibility onto Appellants' counsel when it was always Appellees' responsibility to file a notice and motion with the court in the face, of Appellants' counsel obvious non-concurrence.

In a situation remarkably similar to that at bar, the Sixth Circuit Court of Appeals reversed a district court's blanket, or non-specific seal. Noting that the district court's sealing of court records is normally reviewed for an abuse of discretion, however, that decision is "not accorded the deference that standard normally brings",

31

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan,* 2016 U.S. App. LEXIS 10264, 2016 WL 3163073, at *4 (6th Cir. June 7, 2016) (internal quotation marks omitted).

The appellate court reasoned that during the pretrial discovery phase, courts, as did the trial court at bar below, Protective Order, *R* 37, Page ID ## 897-905, often issue "blanket protective orders that empower the parties themselves to designate which documents contain confidential information." *Id.* Once the parties place a document in the record, however, "very different considerations apply." 2016 U.S. App. LEXIS 10264, [WL] at *3. It is expected that the proponent of sealing must provide compelling reasons to seal the documents and demonstrate that the sealing is narrowly tailored to those reasons—specifically, by "analyz[ing] in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* Even if neither party objects to the propriety of sealing a court record, the district court has an independent duty to "set forth specific findings and conclusions which justify nondisclosure to the public." 2016 U.S. App. LEXIS 10264, [WL] at *4 (internal quotation marks omitted). A court's failure to set forth those findings and conclusions "is itself grounds to vacate an order to seal." *Id.*

While a court "has supervisory power over its own records and files", *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S. Ct. 1306, 55 L. Ed. 2d 570

(1978), including protective orders limiting access to certain court documents, Fed. R. Civ. P. 26(c), the power to seal records is subject to the "long-established legal tradition" of open access to court documents. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983). There is a "presumptive right" of public access to court records that permits inspection and copying. *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470 (6th Cir. 1983), *In re Perrigo Co.*, 128 F.3d 430, 446 (6th Cir. 1997) (Moore, J., concurring in part and dissenting in part) ("[s]ealing court records . . . is a drastic step, and only the most compelling reasons should ever justify non-disclosure of judicial records"). Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News—Sentinel Co., Inc.,* 723 F.2d at 476. Courts have been permitted to seal documents that could be "used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case," contain "reservoirs of libelous statements for press consumption," or contain "business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. "[T]here is a strong presumption that court files will be open to the public," which may be overcome only "where a party's interest in privacy . . . outweigh[s] the public interest in disclosure." *Smith v. SEC*, 129 F.3d 356, 359 n.1 (6th Cir. 1997).

In the Eastern District of Michigan, the process for filing civil material under

seal is regulated by E.D.Mich. LR 5.3, not referenced by the district court. E.D.Mich. LR 5.3(2)(A)(iii) and (iv) require the proponent to state the reason why sealing of each item was necessary and why a means other than sealing was not available or unsatisfactory to preserve the interest advanced in support of the seal. That never happened. The Appellees filed a belated notice and brief as an exhibit to their Response to Appellant's Motion To Unseal. There was already a protective order in place and there was, for example, no showing that the protective order was inadequate or had been violated.

There was no legal authority presented for sealing, as opposed to the protective order, or a statement as to why sealing other than the conclusory argument that the items were confidential, or a showing why a means other than sealing was not available or sufficient to preserve the interests advanced in support of sealing. *Severstal Dearborn, LLC v. Cliffs Sales Co.*, 2013 U.S. Dist. LEXIS 109291, *2-6 ( E.D. Mich. Aug. 5, 2013). Only the documents already a matter of public record had statutory authority which was rendered useless since the documents were already a matter of public record.

The stipulated protective order allowed designation of which documents contained confidential information under Fed.R.Civ.Pro. 26(c). It was the latter part of the proposed order to which Appellants objected. It further provided that any

34

confidential document later filed in the court record must be filed under seal, conflating in one document the "blanket" protective order and the sealing process. Appellants objected to the sealing provision.

The process followed by defendants to seal eliminated the court as gatekeeper. When plaintiff was unable to respond to a request to stipulate to an order allowing the documents to be filed under seal, defendants followed the protective order and filed under seal, rather than filing a motion to file under seal. Appellants responded by filing a motion to unseal. The district court condemned plaintiff's efforts, of "jumping straight to filing a motion to unseal without trying to work the issue out with opposing counsel and without certifying the issue to the court as only the issue of confidentiality required." The court therefore found plaintiff waived the right to object to sealing the documents at issue. Court Order, *R* 54, Page ID ## 1750-1760. The court, however, found that although the protective order required that "no document be filed under seal without leave of court", and this "could be accomplished with the filing of a motion seeking leave, as urged by plaintiffs" [and thus defendants had jumped a step], the fact that defendants followed a different path to filing the sealed documents does not require the Court to order that the documents be unsealed." Court Order, *R* 54, Page ID ## 1760-1761. The court  made no finding that the documents were properly sealed, but upheld the sealing, only "[c]onsidering the manner in which it was raised

by plaintiffs in this case." Court Order, *R* 54, Page ID ## 1760-1761. The court, in finding Appellants followed an improper path ignored paragraph 11 of the protective order, which was the path followed by Appellants, permitting them to file the motion to unseal.

The district court  delegated the sealing process entirely to the Appellees' decision-making. Court Order, *R* 54, Page ID ## 1760-1761.  There was no requirement that there be a showing why this extreme measure was warranted. There was no consideration of the difference between protective orders and the sealing of a file, or that the lawsuit was intended to be a class action, and that the court's action, at the pretrial discovery stage, denied putative class members the right to review the files and to determine whether this was a case properly posited to grant relief.

Above all, the district court never made the requisite showing why this drastic step of filing under seal should be taken in the first place especially on old commercial purchase agreements that were five to six years old.

The court's failure to consider the merits of the sealing of the documents was arbitrary, capricious and an abuse of discretion. *Brown & Williamson, supra* at 1076.

## CONCLUSION

The lower court should be reversed in that it failed to adequately review the

36

purchase transactions allegedly transferred and assigned the entire arbitration agreements at issue, accepting only Appellees representations concerning those procedures. If those transactions did not transfer more than the right to collect debts, as the documentation appears to reflect, then the arbitration agreement presented by Appellees is not viable as it did not transfer.

The lower court should be reversed for failing to determine whether the assignment of the Chase arbitration agreement ever occurred in light of the *Ross* settlement and an express provision in the agreement, itself, that prohibited transfer of any arbitration agreements to Appellees.

As relief, Appellant McIntyre requests this Court to reverse the decision shifting the burden of proof to Appellant McIntyre, and returning it to the proponent of the evidence, and find that the exemplar agreements, not only do not have evidentiary significance as produced, but that the record discloses that they were not in effect and, therefore, were not transferred.

The lower court also erred in its application of Article 9 of the Uniform Commercial Code to a transaction which clearly did not apply to Article 9. These were transactional agreements involved, not secured transactions, the aegis of Article 9.

As relief, Appellant McIntyre requests this Court to reverse the decision

37

shifting the burden of proof to Appellant McIntyre, and returning it to the proponent of the evidence, and find that the exemplar agreements, not only do not have evidentiary significance as produced, but that the record discloses that they were not in effect and, therefore, were not transferred.

The decision to permit sealing should be reversed and remanded for further action with the court to perform the examination as required by court rule and precedent, or as directed by this Court.

ROY, SHECTER & VOCHT, P.C.                ROY, SHECTER & VOCHT, P.C.

/s/Lynn Shecter                                        /s/ Michelle E. Vocht
Lynn H. Shecter                                        Michelle E. Vocht
Counsel for Appellants                            Counsel for Appellants
707 S. Eton St.                                          707 S. Eton St.
Birmingham, MI   48009                         Birmingham, MI 48009
(248) 540-7660                                        (248) 540-7660
shecter@rsmv.com                                  vocht@rsmv.com

Dated: August 17, 2016

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of FRAP 32(a)(7)(B),

excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii) and this

Court's Rule 32(b)(1) because it contains 8,510 words, as determined by the word-

count function of WordPerfect X5, 15.00.50513.

2.      This brief complies with the typeface requirements of FRAP 32(a)(5) and

the type style requirements of FRAP 32(a)(6) because it has been prepared in a

proportionally spaced typeface using WordPerfect X5, 15.00.50513, in 14-point

Times New Roman font.

*(Continued on next page)*

*(Continued from previous page)*

ROY, SHECTER & VOCHT, P.C.
/s/ Michelle E. Vocht
Michelle E. Vocht
Counsel for Appellants
Jacob J. Danley, and
Jeffrey McIntyre, Jr.,
707 S. Eton St.
Birmingham, MI 48009
(248) 540-7660
vocht@rsmv.com                    Dated:  August 17, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on this August 17, 2016, I caused the foregoing

document to be filed electronically with the Court, where it is available for viewing

and downloading from the Court's ECF system, and that such electronic

filing automatically generates a Notice of Electronic Filing constituting service of

the filed document upon the following:

*(Continued on next page)*

*(Continued from previous page)*

DYKEMA GOSSETT

Mr. Theodore W. Seitz

Counsel for Appellees

201 Townsend Street

Suite 900

Lansing, MI 48933

tseiz@dykema.com

DYKEMA GOSSETT

Mr. Aaron L. Vorce

Counsel for Appellees

201 Townsend Street

Suite 900

Lansing, MI 48933

avorce@dykema.com


ROY, SHECTER & VOCHT, P.C.

/s/ Michelle E. Vocht

Michelle E. Vocht

Counsel for Appellants

 707 S. Eton St.

Birmingham, MI 48009

(248) 540-7660

vocht@rsmv.com                    Dated:  August 17, 2016